Thomas BORELLO,

v.

BARRY HYMAN CO., INC.

Thomas BORELLO,

v.

EAST CHICAGO MACHINE TOOL CORP.

Nos. 93–455–M.P., 93–456–M.P.

Supreme Court of Rhode Island.

Dec. 23, 1994.

Michael Schwartz, Providence, for plaintiff.

Joseph C. Salvadore, Barry Hyman Co. Inc., Mark Reynolds, East Chicago Machine Tool Corp., Providence, for defendants.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petitions for certiorari of the defendants, Barry Hyman Co., Inc. (Hyman), and East Chicago Machine Tool Corp. (East Chicago). The petitions sought this court's review of an order that denied in part the defendants' motions to compel production of the entire report of an expert hired by Liberty Mutual Insurance Company, the workers' compensation carrier for the employer of the plaintiff, Thomas Borello. For the reasons set forth, we deny the petitions and affirm the judgment of the Superior Court.

## FACTS

On August 13, 1985, plaintiff was injured in a work-related accident at Providence Gravure, Inc., in Providence, Rhode Island (the worksite). The injury occurred when the piston shaft of a waste-paper baler that plaintiff was operating snapped, thereby releasing the baler's door, which hit plaintiff.[1] The baler had been manufactured by Balemaster, a division of East Chicago; Hyman was the sales agent for Providence Gravure, Inc.'s purchase of the baler.

On April 4, 1986, about eight months after the accident, Liberty Mutual Insurance Company (Liberty Mutual), the workers' compensation carrier for Providence Gravure, Inc., hired John Juechter (Juechter) of Counsultech, Inc., to examine the baler. Juechter subsequently provided a report to Liberty Mutual. Liberty Mutual, in turn, on September 9, 1986, wrote to inform Balemaster that Liberty Mutual was handling plaintiff's workers' compensation claim. The letter stated that, "Recently we [Liberty Mutual] have had out [sic] Expert travel to the insured [at the worksite] and view the Balemaster which Mr. Borello was injured on. We have received our Expert's report indicating your company, Balemaster, was negligent and hence, causing [sic] the aforementioned injury. * * * [K]indly forward this letter to your insurance carrier and have a representative contact me as soon as possible." According to plaintiff, Balemaster took no action after receiving the letter.

On August 11, 1988, and August 12, 1988, plaintiff filed suit against East Chicago and Hyman, respectively. The complaints set forth negligence, breach of warranty and strict liability claims against both companies.

According to defendants, approximately fourteen months later, in October 1989, defendants' representatives visited the worksite in an attempt to view the baler. Upon arrival, they were directed to a machine still in use and apparently of the type involved in the accident. The representatives took photographs of that baler.

On May 21, 1993, John Stefanik (Stefanik), the retired manager of engineering at the worksite, was deposed by defendants. Stefanik testified that the broken portion of the baler had been repaired after the accident, probably the next day, and that the broken shaft was likely discarded. He also testified that the baler door had not been modified after delivery from the factory. When shown photographs of a baler during deposi-

---

1. In its brief, East Chicago refers to the baler in question as a "horizontal" baler. The foreman of maintenance testified in a deposition that the baler in question was a "vertical" baler. In this opinion we refer to it simply as "the baler" or "the machine."

tion, Stefanik identified the baler in the photographs as different from the one involved in the accident. That baler, Stefanik testified, was removed from the worksite and probably sold early in 1989.

Prior to Stefanik's deposition, defendants had filed motions to compel plaintiff to produce Juechter's report. The plaintiff objected to the motions, and the trial justice denied the motions without prejudice, explaining that defendants could reapply for production of the report provided they could demonstrate that a "material change or modification" to the baler had occurred subsequent to Juechter's examination. After deposing Stefanik, defendants again moved to compel the production of Juechter's report on the basis of Stefanik's deposition, and plaintiff again objected. After hearing the parties' arguments, the trial justice ordered plaintiff to produce only those portions of Juechter's report that related to the design and physical characteristics of the baler. (The plaintiff had previously supplied defendants with the photographs that had accompanied the report.) Therefore, only the expert's opinions and conclusions were withheld from defendants.

The defendants' petitions for certiorari were filed pursuant to Rule 13(a) of the Supreme Court Rules of Appellate Procedure and G.L.1956 (1985 Reenactment) § 8–1–2, and writs were issued by this court on November 18, 1993. On February 3, 1994, defendants' motions to consolidate the cases were granted.

## THE ISSUE AND THE ANALYSIS

■ On review before this court, defendants argued that they were entitled to the complete report produced by Juechter, not just the portion circumscribed by the trial justice. Production of the full report was necessary to avoid injustice and undue hardship, defendants asserted, and therefore, the trial justice, defendants argued, had abused her discretion in denying them access to the conclusions of the expert. We disagree.

In her decision the trial justice ordered plaintiff to produce

"those portions of John Juechter's report that relate to design, physical and other characteristics of the subject baler not obtainable through the photographs taken by Mr. Juechter that have been [already] produced by the plaintiff, and portions of the report that describe any design, physical or other characteristic [*sic* ] of the subject baler that do not conform to the ordinary design and physical characteristics for balers of this type."

In short, those portions of the report comprising the facts upon which the expert based his conclusions were compelled, but not his conclusions.

■ The production of experts' reports made in anticipation of litigation in Rhode Island is controlled by Rule 26(b)(2) of the Superior Court Rules of Civil Procedure, which provides in pertinent part:

"A party shall not require a deponent to produce or submit for inspection any writing obtained or prepared by the adverse party, the party's attorney, surety, indemnitor, or agent in anticipation of litigation and in preparation for trial unless the court otherwise orders on the ground that a denial of production or inspection will result in an injustice or undue hardship; nor shall the deponent be required to produce or submit for inspection any part of a writing which reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided hereinafter and in Rule 35, the conclusions of an expert engaged in anticipation of litigation and in preparation for trial."

This court has interpreted the rule as creating a qualified, not an absolute, immunity from producing the conclusions of experts engaged in anticipation of litigation and preparation for trial. *Town of North Kingstown v. Ashley,* 118 R.I. 505, 509–10, 374 A.2d 1033, 1036 (1977). "Upon a showing that it is necessary to avoid injustice or undue hardship, the court may order the production of an expert's reports on such terms and conditions as the court may impose." *Id.* at 510, 374 A.2d at 1036. Thus the ultimate question before us is whether, on the basis of the record before her, the trial justice "abused [her] discretion" by delineating the portion of

the expert's report that would be disclosed. *Id.* Such a standard is appropriate because "[w]e have ruled consistently that a trial justice's handling of discovery is accorded broad discretion." *Kelvey v. Coughlin,* 625 A.2d 775, 776 (R.I.1993). In attempting to compel an expert's report, the party seeking discovery must demonstrate that denial of the production will result in an "injustice or undue hardship." *Jordan v. Stop and Shop Companies, Inc.,* 558 A.2d 957, 958 (R.I.1989)(quoting *Fireman's Fund Insurance Co. v. McAlpine,* 120 R.I. 744, 754, 391 A.2d 84, 90 (1978)). That determination is vested in the sound discretion of the trial justice, who is in a position to evaluate the facts and circumstances of each case in arriving at an ultimate conclusion. 120 R.I. at 754, 391 A.2d at 90.

The defendants rely heavily on *Ashley* in which the trial justice ordered the parties opposing the production of experts' reports to produce the complete reports, a determination that this court subsequently affirmed. *Ashley,* 118 R.I. at 508, 374 A.2d at 1035. In *Ashley,* however, an entire cement canopy over a high school walkway had collapsed and been cleared away two years before the moving party was impleaded. *Id.* at 507–08, 374 A.2d at 1035. In the instant case Balemaster was notified of Juechter's inspection of the baler and of a possible negligence claim against it in September 1986, three years before the baler was removed. Although East Chicago contended that the letter was ignored because it was very general and was a "typical insurance company 'threat' letter," in fact Liberty Mutual's communication specifically identified that an employee had been injured, that Liberty Mutual represented the company where the injury occurred, that a claim had been filed, that an expert had inspected the baler and had reported that Balemaster was negligent and had caused the injury, and finally, that Balemaster had been requested to direct its insurance carrier to contact Liberty Mutual "as soon as possible." On these facts, East Chicago's allegation of undue hardship is without merit.

Moreover, because Stefanik testified that the door of the baler had not been modified prior to the accident and that the baler had been repaired probably the day after it was broken, East Chicago, the manufacturer of the baler, would be in a position to inspect either a similar baler currently in its possession or the machine's design blueprints in order to obtain specific information regarding the baler. The trial justice noted, "[i]t is somewhat unclear to me whether this machine * * * is [a] one-of-a-kind piece of equipment. I don't get that impression." Inasmuch as Juechter did not inspect the baler when it was in its damaged state, East Chicago has not demonstrated that the machine Juechter inspected was different from those in defendants' possession, nor did East Chicago demonstrate that the inspection of one of the balers in its possession would constitute undue hardship.

Turning to defendant Hyman's claim, we recognize that it did not have the same three-year opportunity as East Chicago to inspect the baler involved in the accident. Although the complaint was filed against Hyman in August 1988, Hyman did not attempt to inspect the baler until October 1989, by which time the machine had been removed. This fourteen-month delay, described by Hyman as "diligent" in its brief, is not a sufficient basis upon which defendants can claim hardship. Nor has Hyman demonstrated any material difference between the repaired baler inspected by Juechter and other balers of the same model produced by East Chicago. Thus, we hold that Hyman has not submitted evidence of undue hardship sufficient to reverse the trial justice's determination.

We are of the opinion that the defendants have not demonstrated that the denial in part of their motions will result in an injustice or undue hardship, nor have the defendants produced evidence sufficient to demonstrate that the trial justice abused her discretion by denying in part their motions. We therefore conclude that the trial justice appropriately exercised her discretion by delineating the terms and conditions to be followed in the production of the expert's report.[2]

---

2. The defendant, East Chicago, alleged that the Federal Rules of Civil Procedure would mandate

production of the entire document and has urged

The petitions for certiorari are denied and dismissed; the writs previously issued are quashed. We affirm the order of the Superior Court, to which the papers in the case may be returned.

us to adopt a similar rule. We decline the op-       portunity.